UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LIPPERT COMPONENTS MANUFACTURING, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:14-CV-1999 JD ) |
| MOR/RYDE INTERNATIONAL INC., and MOR/RYDE INC., | ) ) ) ) |
| Defendants. | ) |

# OPINION AND ORDER

Plaintiff Lippert Components Manufacturing, Inc. ("Lippert") alleges that Defendants Mor/Ryde International, Inc. and Mor/Ryde, Inc. ("Mor/Ryde") have infringed and contributed to the infringement of Lippert's patents (U.S. Patent Nos. 7,918,478 (issued on April 5, 2011) and 7,296,821 (issued on November 20, 2007), hereinafter referred to as the '478 patent and '821 patent, respectively), which concern the same suspension system equalizer technology.[1] The accused instrumentality concerns Mor/Ryde's products known as the CRE/3000 suspension system [DE 61-2] and the SRE/4000 suspension system [DE 61-3]. The parties initially identified four terms appearing in the patents that require construction: "suspension system"; "pivotally mounted"; "generally encapsulated between"; and, "at least partially encapsulated between". However, once the claim construction briefs were filed [DE's 110, 121, 122, 132, 133]

---

[1] The patents-in-suit are entitled "Equalizer For Suspension System" and relate to an equalizer for a suspension system for a trailer. The Abstracts and the Summary of the Invention of the patents-in-suit provide that an equalizer is configured to absorb or dampen harsh shocks or vibrations coming off of leaf springs to allow for a softer ride in vehicles or trailers having tandem axles generally between 2,000 to 7,000 pounds with double eye springs. The invention achieves this softer ride by using one or two independent equalizer arms that are rotatably secured within the equalizer. Each equalizer arm is associated with one of the leaf springs such that upon upward movement of the leaf spring, the equalizer arm assembly is forced to rotate within the equalizer and to deform a shock absorber provided within the equalizer. The shock absorber then, upon deformation, absorbs the shocks and vibrations.

and the claims construction hearing held [DE 168], the parties agreed that the only contested term requiring the Court's consideration was the term "pivotally mounted".[2]

## I. Legal Standard

As a matter of law, the Court must construe the claims of the patent for the jury. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed. Cir. 1995). Claim construction is crucial because it "defines the scope of the protected invention." *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 619 (Fed. Cir. 1995).

In interpreting a disputed claim, the court must first look at the intrinsic evidence of record—the patent itself, including the claims, the specification, and (if in evidence) the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The process begins with the words of the claims. *Teleflex, Inc. v. Ficosa North American Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002). "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotations and citations omitted); *Teleflex*, 299 F.3d at 1324 ("The claim language defines the bounds of claim scope."). Absent an express intent otherwise, claim terms should be given "the ordinary and customary meaning . . . that the term would have to a person of ordinary skill in the art in question at the time of the invention."[3] *Phillips*, 415 F.3d at 1313. "[T]he context of the surrounding words of the claim

---

[2] The parties agree that "suspension system" is properly construed as "component(s) connecting the axle of a vehicle to the frame of the vehicle" [DE 110 at 2]; and, they withdrew construction of the terms "generally encapsulated between" and "at least partially encapsulated between".

[3] Mor/Ryde does not dispute Lippert's assertion that the person of ordinary skill in the art is someone who has either (i) a high-school degree and approximately five years of mechanical experience in suspension systems for trailers or recreational vehicles or (ii) a mechanical technology degree with approximately a year of experience in suspension systems for trailers or recreational vehicles.

also must be considered in determining the ordinary and customary meaning of those terms." *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003).

However, the claims do not stand alone and they "must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315 (quoting *Markman*, 52 F.3d at 979). The specification includes the drawings and the written description of the invention. *Playtex Products, Inc. v. Procter & Gamble, Co.*, 400 F.3d 901, 909 (Fed. Cir. 2005). The specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582). It can resolve ambiguities between the ordinary and customary meaning of words if the words used in the claim are not sufficiently clear to allow the scope of the claim to be determined from words alone. *Teleflex*, 299 F.3d at 1325. Yet, there's a difference "between using the specification to interpret the meaning of a claim," which is permissible, and "importing limitations from the specification into the claim," which is not. *Phillips*, 415 F.3d at 1323. "[T]he general principle is that limitations from the specification are not to be read into the claims." *Sjolund v. Musland*, 847 F.2d 1573, 1582 (Fed. Cir. 1988) (citation omitted).

Finally, the court must look to the patent's prosecution history, which "consists of the complete record of the proceedings before the [USPTO] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "The prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id*. A patentee may modify the "meaning of a

claim term by making a clear and unmistakable disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006).

Nonetheless, if intrinsic evidence does not resolve the ambiguity in a disputed claim term, the court may then look to extrinsic evidence, such as expert testimony, inventor testimony, dictionaries, and treatises. *Vitronics*, 90 F.3d at 1584. Extrinsic evidence may help the court better understand "the way in which one of skill in the art might use the claim terms." *AquaTex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1380 (Fed. Cir. 2005) (citations omitted). But extrinsic evidence may not be used to "contradict any definition found in or ascertained by a reading of the patent documents." *Phillips*, 415 F.3d at 1322–23 (quoting *Vitronics*, 90 F.3d at 1584, n.6). As the Federal Circuit explained in *Phillips*: "Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id*. at 1316 (citation omitted).

## II. Construction of "Pivotally Mounted"

The term "pivotally mounted" appears in the '821 patent: Claims 1, 8-10, 12-14, 23-25, and 27-28 (with Claims 1 and 14 asserted in the independent format); and, in the '478 patent: Claims 1, 4, 15, and 17 (with Claims 1 and 15 asserted in the independent format).

In its opening claim construction brief, Lippert proposes that "pivotally mounted" should be construed as "mounted for rotation about an axis." [DE 121 at 13]. Lippert notes that the specifications of the patents use the description "rotatably secured or pivotally mounted," and the figures illustrate that the rotation occurring between the identified components occurs "about an

axis." Extrinsically, Lippert argues that its proposed definition is also consistent with the dictionary definitions that it has provided.

In response, Mor/Ryde argues that Lippert's claim construction position relative to the term "pivotally mounted": (1) is inconsistent with the plain and ordinary meaning given to it by the specification "because it would include embodiments where the axis point could move non-rotationally" [DE 133 at 7–9]; (2) broadens the claims beyond the inventor's intention as evidenced by the inventor's descriptions of the invention in the patents' Summary of the Invention, the Abstract, and the embodiments [*Id*. at 9–11]; (3) is not consistent with the remaining dictionary definitions of the word "pivot" [*Id*. at 11–12]; and (4) will render the patents-in-suit invalid for failure to comply with the enablement requirement [*Id*. at 13–14]. Ultimately, Mor/Ryde argues that no construction of the term "pivotally mounted" is necessary because the ordinary and customary meaning is so apparent—that is, the term necessarily describes rotational (not linear) movement, around a "fixed" axis. In sum, the parties' dispute concerns whether "pivotally mounted" allows rotational movement only from a fixed point.

The Court finds that the intrinsic evidence does not support Mor/Ryde's overly narrow reading of the claim term "pivotally mounted". Claims 1 and 14 of the '821 patent recite that a "first plate [is] pivotally mounted to the frame of the vehicle" and that "at least one equalizer arm [is] pivotally mounted to said first plate"; and, Claim 14 further recites that the "equalizer [is] pivotally mounted to the frame of the vehicle." [DE 121-1 at 27-28]. Similarly, Claims 1 and 15 of the '478 patent recite that a "first plate [is] pivotally mounted to the frame of the vehicle" and that "at least one equalizer arm [is] pivotally mounted to said first plate"; and, Claim 15 further recites that the "equalizer [is] pivotally mounted to the frame of the vehicle." [DE 121-2 at 68-69].

The specifications of the '821 and '478 patents describe that the first plate is "rotatably secured or pivotally mounted" [DE 121-1 at p. 26, 17:62-18:28; DE 121-2 at p. 54, 20:21-49]; that the equalizer arm is "rotatably secured or pivotally mounted between the first and second base plates" [DE 121-1, at 26, 17:39-45; DE 121-2 at 54, 19:66-20:6]; and, that the equalizer is "rotatably secured or pivotally mounted" between extending portions of the center frame hangar [DE 121-1 at p. 26-27, 17:62-18:28, 18:45-19:6; DE 121-2 at p. 54-55, 20:21-49, 21:3-31].

With respect to the drawings, figures 2 and 35-36 of the '821 patent illustrate that the first plate (104b) of the equalizer (100) is mounted for rotation about an axis (illustrated at point J in figure 2, *see also* fastening member (390)) to a center frame hanger (372) of the frame (374) of the vehicle. DE 121-1 at Figs. 2 and 35-36; *see also* DE 121-1 at p. 26-27, 18:49-55 (discussing that the equalizer is "rotatably secured" to the center frame at point J). The figures also illustrate that the equalizer arm (108b) is mounted for rotation about an axis (illustrated at points R or S in figure 2, *see also* fastening members (122b and 122c) and securing members (124b and 124c)) to the first plate (104b), wherein the rotation can actually be seen in comparing the change in the side spacing between the first plate (104b) and the equalizer arm (108a/b) across figures 36-38. *Id*.; *see also* DE 121-1 at p. 26-27, 17:39-45; 19:56-60 (discussing that the equalizer arm "rotates or pivots" about point R); 20:17-21 (discussing that the equalizer arm "rotates or pivots" about point S).[4] Similarly, figures 39-44 of the '478 patent illustrate that the first plate (520a) of the equalizer (500) is mounted for rotation about an axis (illustrated at point J in figure 39, *see also* upper pivot tube (532) and bushing (534a)) to a center frame hanger (516) of the frame (760) of the vehicle. DE 121-2, at Figs. 39-44; *see also* DE 121-2 at p. 61, 33:9-13 (noting that the

---

[4] In the specification of the '821 and '478 patents, the rotation that occurs between the identified components occurs "about an axis." DE 121-1, 3:12-34 (describing the views of Figures 33 through 38); 19:55-60; 20:17-22 (noting rotation occurs about identified points R and/or S, with said points corresponding with an axes); *id*. at 18:49-55 (noting rotation occurs about identified point J, with said point corresponding with an axis).

equalizer "rotates" upwardly and to the left relative to the center hanger (516) about point J); 33:31-35 (noting that the equalizer "rotates" upwardly and to the left relative to the center hanger (516) about point J). The figures also illustrate that the equalizer arm (524a) is mounted for rotation about an axis (illustrated at points R or S in figure 39; *see also* fastening members (750b and 750c) and securing members (756b and 756b)); *see also* pivot tubes (590a and 590b) of the equalizer arms to the first plate (520a). *Id.*; *see also* DE 121-2 at p. 61, 33:13-17 (noting that the equalizer arm "rotates" or pivots upwardly between the first and second plates about point R); 33:35-39 (noting that the equalizer arm "rotates" or pivots upwardly between the first and second plates about point S).

Thus, the specifications indicate that rotation of parts "pivotally mounted" occur about a point or axis, but does not necessarily limit the movement to a "fixed" axis point. Mor/Ryde's attempt to import such a limitation, without a clear indication in the intrinsic record that the patentee intended the claims to be so limited, is improper. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Moreover, the fact that the patentee disclosed particular embodiments, does not necessarily import such a limitation. *GE Lighting Sol'ns, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) (reasoning that the specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal; and, to act as its own lexicographer, a patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term[]"; while, disavowal requires that "the specification [or prosecution history] make[ ] clear that the invention does not include a particular feature."). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication

7

in the intrinsic record that the patentee intended the claims to be so limited." *Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Here, the specifications explicitly clarified that "this invention may be susceptible to embodiment in different forms" and that the embodiments disclosed are "to be considered an exemplification of the principles of the invention, and . . . not intended to limit the invention to that as illustrated." [DE 121-1 at 19; DE 121-2 at 47]. The specifications further provided that although preferred embodiments "of the invention [are] shown and described, it is envisioned that those skilled in the art may devise various modifications without departing from the spirit and scope of the foregoing description and the appended claims." [DE 121-1 at 27; DE 121-2 at 68]. Thus, the specifications and the prosecution history do not define "pivotally mounted" (except to alternatively refer to the term as "rotatably secured") or include any indication that the inventor intended to act as its own lexicographer. In fact, the inventor expressly identified other mountings as "fixed," as distinguished from pivotal mounting. DE 121-2 at p. 69, 49: 1-2 ("a second plate, spaced from said first plate, which is *fixedly mounted* to the first plate for pivoting therewith") (italics added). Likewise, the specifications do not disavow or disclaim the plain meaning of "pivotally mounted" or otherwise limit the term to a particular disclosed embodiment, let alone one that requires rotation from a fixed point.

The Court also concludes that the dictionary definitions provided by the parties need not be referred to by the Court because the intrinsic evidence makes the meaning of the term "pivotally mounted" clear. Although it is true that some of the dictionary definitions identified by Mor/Ryde [DE 133 at 11-12] would indicate that the term "pivot" could require rotation on a fixed axis (i.e., a basketball player who while stationary pivots on one foot), this extrinsic evidence may not be used to contradict any definition ascertained by a reading of the patent

documents. *Phillips*, 415 F.3d at 1322–23. Moreover, other dictionary definitions identified by Lippert [DE 121 at 15], indicate that the term "pivot" can also relate to rotation about an axis (i.e., a short rod or shaft on which a related part rotates or swings). Thus, even if the dictionary definitions were considered, the Court's claim construction would remain unchanged. Therefore, the Court concludes that the term "pivotally mounted" means "mounted for rotation about an axis".[5]

### III. Conclusion

For the foregoing reasons, the disputed claim term "pivotally mounted" is construed in the manner set forth in this Opinion and Order. The Court will contact counsel in the near future to schedule a telephonic status conference so that this case may move forward.

SO ORDERED.

ENTERED: June 18, 2018

                                            /s/ JON E. DEGUILIO
                                            Judge
                                            United States District Court

---

[5] At this time, the Court need not (and cannot) address the defense's vague assertion and insufficiently developed argument that such a construction "would likely" render the patents invalid because one of ordinary skill in the art would be "unlikely to practice the claimed invention". [DE 133 at 13]. This enablement requirement of 35 U.S.C. § 112(a) indicates that one skilled in the art must be enabled to make and use the invention. But the Court has insufficient facts before it to decide this issue, which is typically resolved on summary judgment. *See, e.g., Minerals Separation Ltd. v. Hyde*, 242 U.S. 261, 270 (1916) (asking whether the experimentation needed to practice the invention is undue or unreasonable); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988); *United States v. Telectronics, Inc.*, 857 F.2d 778, 785 (Fed. Cir. 1988) ("Invalidity must be proven by facts supported by clear and convincing evidence.").